J-A21025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.J.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.F. A/K/A J.K.F., | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1143 EDA 2018 |

Appeal from the Decree February 7, 2018
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2017-9087

BEFORE:  PANELLA, J., OLSON, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                     **FILED OCTOBER 10, 2018**

Appellant, J.F. a/k/a/ J.K.F. (hereinafter "Mother"), appeals from the decree entered on February 7, 2018, terminating her parental rights to K.J.G. (hereinafter "Child") pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8), and (b).[1]   On appeal, Mother's counsel filed a petition to withdraw as counsel and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's petition to withdraw and affirm the decree involuntarily terminating Mother's parental rights.

The trial court briefly set forth the facts and procedural history of this case as follows:

---

[1]   On February 7, 2018, the trial court also entered a decree voluntarily terminating the parental rights of Child's father.  He is not a party to the current appeal.

[Child] was born [i]n May [], 2009. Child came into the care of [the Bucks County Children and Youth Social Services Agency (hereinafter "the Agency")] on December 16, 2015 and was placed in the care of a maternal aunt and uncle, with whom Child had lived from February 2015 through November 2015. In November 2015, Child was returned to Mother's care for approximately one (1) month. However, in mid-December 2015, Mother experienced a drug overdose, prompting the Agency to petition for a shelter care hearing on or about December 16, 2015. Child [] remained with her aunt and uncle since that date. On March 29, 2016, [the trial court] adjudicated [Child] dependent, and on July 7, 2017, [the trial court] ordered that the permanency plan goal could be changed from reunification to adoption ninety (90) days thereafter. On September 11, 2017, the Agency filed the subject petition for the involuntary termination of Mother's parental rights under [the aforementioned subsections of the Adoption Act]. On March 6, 2018, Mother filed a timely appeal of [the trial court's] February 7, 2018 [decree involuntarily terminating her parental rights].

Trial Court Opinion, 5/8/2018, at 1-2 (record citations and superfluous capitalization omitted).

We have recently reiterated:

Before reaching the merits of [an] appeal, we must first address the propriety of counsel's petition to withdraw and ***Anders*** brief. The ***Anders*** procedure, whereby court-appointed counsel may seek to withdraw if he or she concludes that an appeal is wholly frivolous, initially applied to direct appeals in criminal matters. ***In In re V.E.***, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the ***Anders*** procedure to appeals from decrees involuntarily terminating parental rights.

***In re J.D.H.***, 171 A.3d 903, 905 (Pa. Super. 2017).

To withdraw pursuant to ***Anders***, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel

or raise additional arguments that the [appellant] deems worthy of the court's attention.[2]

*Id.* at 907.

Additionally, an **Anders** brief must comply with the following requirements:

(1)  provide a summary of the procedural history and facts, with citations to the record;

(2)  refer to anything in the record that counsel believes arguably supports the appeal;

(3)  set forth counsel's conclusion that the appeal is frivolous; and

(4)  state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.*, *citing* **Santiago**, 978 A.2d at 361.

Upon review, counsel has complied with all of the foregoing requirements pursuant to **Anders** and **Santiago**. Thus, we proceed to review the issues set forth in counsel's **Anders** brief and then we conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel. *Id.* at 908.

In her **Anders** brief, counsel for Mother raises the following issues:

1. Did the [t]rial [c]ourt commit an error of law and abuse of discretion by permitting Child's [legal interest] counsel to state Child's [preference] without interviewing [] Child on the record?

_____

2  Mother has not responded to counsel's petition to withdraw or **Anders** brief.

- 3 -

2. Did the [t]rial [c]ourt commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa.C.S.A. § 2511(a)(2), (5), and (8)?

3. Did the [t]rial [c]ourt commit an error of law and abuse of discretion by involuntarily terminating [Mother's] parental rights under 23 Pa.C.S.A. § 2511(b)?

*Anders* Brief at 2-3.[3]

We examine the issues pursuant to our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotations omitted).

First, Mother contends that "Child's client-directed [legal] counsel's statements [regarding] the Child's position [as to her preferred outcome in the proceedings] was inadmissible hearsay and the trial judge should have spoken to [] Child to determine [her preference regarding] terminating the parental rights of Mother." *Anders* Brief at 25.

The trial court determined:

It is undeniable that the [Pennsylvania Supreme Court's decision in *In re Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017)]

_____

[3] We have reordered the issues for ease of discussion.

- 4 -

mandated the utilization of client-directed legal counsel in termination matters where there is an actual or potential conflict between the goals and preferences of the child as opposed to those of the child's best interest counsel. No concrete guidance was provided as to the means of presenting the child-client's wishes in [c]ourt. In *In re B.L.L.*, 787 A.2d [1007 (Pa. Super. 2001)], which was decided prior to *L.B.M.*, the Pennsylvania Superior Court, in analyzing between custody decisions and involuntary termination decisions, instructed that in involuntary termination proceedings, the testimony of the child is not a requisite part of the inquiry, which focuses on the parenting capacity of the parent. No statute or case law exists which requires or permits the child's testimony to be an element of that review. *See also In re Child M*, 681 A.2d 793, 798 (Pa. Super. 1996) ("Appellant has not cited any judicial decision, statute, or constitutional provision which would entitle a natural parent to force an abused child to testify in an involuntary termination proceeding. We decline to create any such requirement.).

\*　　　\*　　　\*

Counsel represented that Child in this case, who [was] almost nine (9) years old, is "bright" and "mature beyond her years" and that she understood the nature of the subject proceedings as well as the ramifications of the potential [c]ourt decision that termination of Mother's parental rights was appropriate[.] Counsel stated that [Child] clearly and unequivocally expressed her desired outcome [that Mother's rights be terminated and her desire not to testify because it would upset Mother].

\*　　　\*　　　\*

If [the trial court were] to require Child to testify in [c]ourt or even in chambers in these highly charged circumstances, it would likely cause additional distress and long-lasting, if not permanent, emotional trauma.

Trial Court Opinion, 5/8/2018, at 14-16.

Children have a statutory right to counsel in contested involuntary termination proceedings:

The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

This Court has recognized:

Our Supreme Court held in [] **L.B.M.** [] that the orphans' court must appoint counsel **who is directed by the child** to represent the legal interests of a child involved in a contested involuntary termination proceeding pursuant to this subsection. As our Supreme Court held, a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. **L.B.M.**, 161 A.3d at 174.

*In re Adoption of D.M.C.*, 2018 WL 3341686, at *2 (Pa. Super. 2018) (emphasis added). "'Legal interests' denotes that an attorney **is to express the child's wishes to the court** regardless of whether the attorney agrees with the child's recommendation." **L.B.M.**, 161 A.3d 172, 175 n.2, *citing* Pa.R.J.C.P. 1154 comment (emphasis added).

In subsequent decisions since **L.B.M.**, this Court has held that we must raise a child's right to client-directed legal counsel *sua sponte*. **See In re K.J.H.**, 180 A.3d 411 (Pa. Super. 2018) (holding that this Court must raise sua sponte child's right to counsel); **In re Adoption of T.M.L.M.**, 184 A.3d 585, 590–591 (Pa. Super. 2018) (same); **In re Adoption of D.M.C.**, 2018 WL 3341686, at *5 (Pa. Super. 2018) (same). In **In re Adoption of T.M.L.M.**, 184 A.3d 585, 590–591 (Pa. Super. 2018), we remanded the

matter to the trial court because counsel failed to interview the child and the child's preference was unclear. This Court observed:

> We recognize that attorneys may encounter unique challenges when representing children that are different from the challenges they may encounter when representing adults, particularly when the representation concerns such sensitive subject matter. Nevertheless, counsel representing children must represent their clients with zeal and professionalism. Children have no say in appointment of counsel and deserve to have the benefit of effective representation, particularly when a matter as important as their future relationship with a biological parent is at stake. Not only do children not have a say in the appointment of counsel, due to their minority, most children are not in a position to assess whether counsel has represented their interests effectively.
>
> *          *          *
>
> Like adult clients, effective representation of a child requires, at a bare minimum, **attempting to ascertain the client's position and advocating in a manner designed to effectuate that position**. It may be that [the child's] preferred outcome [] is synonymous with his best interests. It may be that [the child] wants no contact with [the parent]. [The c]hild may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of [a parent's] rights may still be appropriate even if [the child] prefers a different outcome. However, pursuant to the Supreme Court's opinion in Sections I and II–A of *L.B.M.*, it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests

*In re Adoption of T.M.L.M.*, 184 A.3d at 590 (internal citation and quotations omitted) (emphasis added).

Accordingly, when there is no indication of a child's preference on the record, we have consistently remanded cases to the trial court for legal

counsel to interview the child directly to determine a preferred outcome, follow the child's direction to the extent possible, and advocate in a manner that comports with the child's legal interests. *Id.* at 591; *see also In re Adoption of D.M.C.*, 2018 WL 3341686, at *6; *see also In re Adoption of M.D.Q.*, 2018 WL 3322744, at *5 (Pa. Super. 2018). After consultation with the child, we have directed that the child's "legal-interests counsel **shall notify** the orphans' court whether the result of the prior [termination] proceedings was consistent with [the child's] legal interests or whether counsel believes a new hearing is necessary to provide counsel an opportunity to advocate on [the child's] behalf." *T.M.L.M.*, 184 A.3d at 591 (emphasis added).

Furthermore, our Supreme Court has recently held that "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-[guardian *ad litem*] representing the child's best interests can also fulfill the role of the attorney appointed per Section 2313(a) to represent the child's legal interests." *In re T.S.*, 2018 WL 4001825, at *6 (Pa. 2018). A guardian *ad litem* has a duty to: "[a]dvise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court." Pa.R.J.C.P. 1154(9); 42 Pa.C.S.A. 6311(b)(9). If a guardian *ad litem* who is also acting in dual capacity as legal interest counsel on behalf of

a child has a duty to report a child's wishes directly to the court, separately appointed legal interest counsel should have the same duty.

Moreover, as the trial court noted, "[t]he focus of involuntary termination proceedings is on the conduct of the parent." **In re B.L.L.**, 787 A.2d at 1013. "In contrast to those which exist in custody or adoption proceedings, there is no statutory requirement nor is there any Pennsylvania appellate decision which permits or requires the testimony or preference by the child to be placed on the record as an integral part of a termination proceeding." **Id.** at 1014; **see also In re Child M.**, 681 A.2d at 798 (there is no law which "would entitle a natural parent to force an abused child to testify in an involuntary termination proceeding").

Upon review, we agree with the trial court's assessment that Child's testimony was unwarranted and that legal counsel's advocacy on Child's behalf did not constitute hearsay. As the law above establishes, legal interests counsel has a duty to ascertain the child's preference regarding the termination of parental rights and to express the child's wishes to the court. Legal counsel is an advocate for the child. He or she is required to report his or her findings to the trial court for its assessment. The child, however, drives legal counsel to advocate his or her preferred position directly to the trial court. As our recent decisions to remand cases for confirmation of a child's preference indicate, there is no requirement that the child testify and, instead, we have directed legal counsel to report his or her findings regarding preference directly to the trial court. Here, legal counsel met with Child,

explained the effect of termination of Mother's rights to her, and then reported that Child was bright and understood the nature of the proceedings at the termination proceeding. N.T., 1/29/2018, at 131-134. Child preferred living with her aunt and uncle because, *inter alia*, she was afraid she would be responsible should Mother overdose again, and "she was clear that it was her preferred outcome that [Mother's] parental rights be terminated with respect to her." *Id.* at 133. Child also stated that she did not wish to testify because she did not want to upset Mother. *Id.* at 132. Here, legal counsel consulted with Child regarding her preferred outcome in the termination proceeding and reported his findings directly to the trial court as required.[4] Accordingly, we discern no error of law or abuse of discretion when the trial court permitted legal counsel to express Child's preferred outcome in the proceedings directly to the trial court.

In the second **Anders** issue we address on appeal, Mother posits that the Agency failed to introduce clear and convincing evidence to support termination of her rights under 23 Pa.C.S.A § 2511(a)(2), (a)(5), and (a)(8). **Anders** Brief at 15-20.

In cases involving termination of parental rights,

> our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child.

---

[4] Legal counsel for Child has also filed an appellate brief with this Court reiterating Child's preferred outcome and arguing that his advocacy did not constitute hearsay.

The party seeking the termination of parental rights bears the burden of proving that grounds for termination exist by clear and convincing evidence. Clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. Although this Court has stated that the standard of review for an appellate court in these matters is limited to the determination of whether the trial court's decree is supported by competent evidence, we have also explained that the factual findings of the trial court should not be sustained where the court abused its discretion or committed an error of law. Thus, absent an abuse of discretion or error of law, where the trial court's factual findings are supported by competent evidence, an appellate court must affirm the trial court even though the record could support the opposite result.

The Adoption Act provides the following with respect to the termination of parental rights:

> (a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> \* \* \*
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably

available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\*   \*   \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).

Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions.

\*   \*   \*

Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. A parent has a duty to work towards reunification by cooperating with the rehabilitative services necessary for him or her to be able to perform parental duties and responsibilities. Significantly, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

Most importantly, parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and

- 12 -

emotional needs. Thus, a parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment.

*Matter of Adoption of M.A.B.*, 166 A.3d 434, 442–443 (Pa. Super. 2017) (internal citations, quotations, brackets, and ellipsis omitted).

Here, the trial court examined this case pursuant to all three subsections of 2511(a) as presented in the Agency's petition. "[W]e need only agree with its decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (internal citation omitted). We will focus our review pursuant to Section 2511(a)(2), wherein three prerequisites must be met:

(1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011) (internal citation omitted).

At the termination proceeding, the Agency presented the testimony of the social worker assigned to the case. She testified that Child came into the Agency's care on December 16, 2015, because Mother lacked stable housing and there were concerns regarding Mother's mental health and drug and alcohol use. N.T., 1/29/2018, at 9-12. The social worker testified that one of the reasons Child came into the care of the Agency was because Mother had taken pills and Child was unable to wake her up. *Id.* at 67. In the two years

Child was under the Agency's care, Mother resided at approximately thirty different locations. *Id.* at 12-20. Mother rejected residential drug and alcohol treatment. *Id.* at 17. Mother started sporadically receiving mental health counseling in June 2017, but was discharged for non-compliance in December 2017. *Id.* at 25-28. During scheduled visitation with Child, the Agency called the police on two separate occasions because Mother verbally assaulted the visitation worker and raised her fists in anger. *Id.* at 60. Between February 2017 and June 2017, Child refused visitation with Mother. *Id.* at 29. Thereafter, the Agency hired therapists to assist in reestablishing visitation. *Id.* at 32-35.

Upon review, we discern no abuse of discretion or error of law by involuntarily terminating Mother's parental rights under Section 2511(a)(2). Child came into the Agency's care because of Mother's lack of stable housing, untreated mental health issues, and her drug and alcohol abuse. Over the course of roughly two years, Mother consistently changed residences (approximately 30 times) and still lacked stable housing. During that time, Mother failed to complete her mental health program and refused substance abuse treatment. As a result, Child has been without essential parental care and Mother has not provided a remedy. Accordingly, termination was proper under Section 2511(a)(2).

In the third **Anders** issue we address on appeal, Appellant contends:

> Another arguable issue on appeal is [the Agency's] failure to prove, as required by 23 Pa.C.S.A. § 2511(b), that termination of parental rights would best serve the needs and welfare of [C]hild.

Specifically, Mother may seek to bring a claim that there was inadequate evidence of record to address the impact on [] Child of the severance of any bond that she shared with [C]hild.

*Anders* Brief at 20.

After the trial court determines termination is proper under Section 2511(a), the trial court must give primary consideration to:

the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

This Court has stated:

Intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child. In addition, we [have] instructed that the orphans' court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. The mere existence of an emotional bond does not preclude the termination of parental rights. Rather, the orphans' court must examine the status of the bond to determine whether its termination would destroy an existing, necessary and beneficial relationship.

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider

- 15 -

the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d at 103 (internal citations, quotations, and original brackets omitted).

On this issue, the trial court found:

[T]he record is devoid of evidence of a necessary and beneficial relationship between Mother and [Child], the existence of which, should Mother's rights be terminated, would result in a negative effect on Child.

Trial Court Opinion, 5/8/2018, at 11. The trial court also concluded that the Agency presented "uncontroverted evidence of a strong bond between [the] foster family and Child." *Id.* at 10

We agree. Upon review of the certified record, the Agency presented clear and convincing evidence of a strong bond between Child and her foster parents. The social worker for the Agency testified that Child is comfortable and affectionate towards her foster parents and that the foster parents expressed their desire to adopt her. N.T., 1/29/2018, at 39-41. Child has her own room at her current residence, made friends at school and in the neighborhood, and is an excellent student. *Id.* at 40-41. The foster parents have helped Child receive necessary mental health treatment. *Id.* at 40. Child has consistently told the Agency social worker that she wants to stay with her foster parents and ultimately wants them to adopt her. *Id.* at 67. Child also told legal-interest counsel that she wanted her foster parents to

continue to make decisions about her schooling, medical care, and religious affiliations. *Id.* at 131-132. Finally, as detailed above, there was evidence that Mother was disruptive during visitation and that Child was reluctant to continue contact. Child ultimately told legal-interest counsel that she loved Mother and understood it would upset her, but Child preferred termination of Mother's rights so that Child could be adopted by her foster parents. *Id.* at 132. Based upon all of the foregoing, there was no evidence Mother and Child's bond was necessary or beneficial or that severing that bond was detrimental to Child. The record supports the trial court's Section 2511(b) analysis.

Finally, we have conducted an independent review of the entire record as required by *Anders* and have not discerned any other potentially non-frivolous issues. *See In re J.D.H.*, 171 A.3d at 908.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/10/18